UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LORENZO REDD,  :
                Plaintiff,  :
v.  :
  :
P. CHARLES GARELL, M.D.; WAINWRIGHT, :
M.D.; REMER, M.D.; WESTCHESTER  :
MEDICAL CENTER; DR. RAZIA K.  :
FERDOUS, Facility Health Services Director; :
SONJI HENTON, Deputy Superintendent of :
Health Services; DR. CARL J.  :
KOENIGSMANN, Deputy Commissioner and :
Chief Medical Officer; and THOMAS  :
GUDEWICZ, Nurse,  :
                Defendants.  :
--------------------------------------------------------------x

**OPINION AND ORDER**

18 CV 9436 (VB)

Briccetti, J.:

      Plaintiff Lorenzo Redd, proceeding pro se and in forma pauperis, brings claims against Facility Health Services Director Dr. Razia K. Ferdous; Deputy ("Dep.") Superintendent ("Supt.") of Health Services Sonji Henton; Nurse Thomas Gudewicz; Dep. Commissioner and Chief Medical Officer Dr. Carl J. Koenigsmann (collectively the "State Defendants"), as well as Dr. P. Charles Garrell; Dr. Wainwright; Dr. Remer; and Westchester Medical Center ("WMC") (collectively, the "Medical Defendants").

      Liberally construed, the amended complaint sets forth an Eighth Amendment claim for deliberate indifference to serious medical needs against all defendants and a First Amendment retaliation claim against Dep. Supt. Henton and WMC.

      Now pending is the State Defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #49). The Medical Defendants have filed answers and are not parties to the pending motion to dismiss. (Docs. ##40, 41).

      For the reasons set forth below, the State Defendants' motion to dismiss is GRANTED.

1

This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

At all relevant times, plaintiff was an inmate at Sing Sing Correctional Facility ("Sing Sing"), Green Haven Correctional Facility ("Green Haven"), and Fishkill Correctional Facility ("Fishkill").

I.  Spinal Surgery and Follow-Up Treatment

On July 5, 2017, plaintiff underwent surgery on his lower lumbar spinal cord area. The surgery was performed by Dr. Garrell at WMC. Plaintiff alleges that during the surgery, he went into shock from "loss of blood and the anesthesia," and that he experienced complications from the surgery. (Doc. #36 ("Am. Compl.") at ECF 6).[1] Plaintiff further alleges he continued to feel acute pain, and had trouble "bending forward, standing for more than a half hour, or sitting down" for long periods of time. (Id.).

Plaintiff alleges Dr. Garrell "refused to give [him] a full examination" during any of the six follow-up appointments in the ten months following his surgery. (Am. Compl. at ECF 6). Further, plaintiff alleges Dr. Garrell "refused to tell the officer" to remove plaintiff's handcuffs and shackles for a full mobility examination. (Id. at ECF 7).

---

[1] "Am. Compl. at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

2

Plaintiff claims he was not given proper post-surgery care, such as a second spinal surgery or prompt physical therapy, despite Dr. Gevirr of Fishkill's finding that a second surgery supplemented by physical therapy, would address plaintiff's continued complications.

According to plaintiff, he did not receive physical therapy until February 2018—eight months after his surgery. Plaintiff attributes this delay to Dr. Koenigsmann. Plaintiff further alleges Dr. Koenigsmann did not provide physical therapy despite requests from Dr. Garrell in August and October 2017, and plaintiff's medical provider, Ms. V. Monroe.

Plaintiff alleges he was examined by Dr. Wainwright at WMC in May 2018, who echoed Dr. Gevirr's findings and told plaintiff he would "need physical therapy again." (Am. Compl. at ECF 9).

II.  Spinal Injury on July 17, 2018

According to plaintiff, on July 17, 2018, at approximately 5:00 a.m., he tried to stand up from his bed in his cell in Sing Sing, and he "heard and felt a very hard crack in [his] lower lumbar spinal cord area." (Am. Compl. at ECF 10). Plaintiff claims he complained of pain and that a sergeant took him to medical in a wheelchair. Plaintiff alleges he spoke to Nurse Gudewicz at 8:00 a.m., who told plaintiff a doctor would not be available until 2:00 p.m., instructed plaintiff to return to his cell, and provided plaintiff a medical return pass. Plaintiff alleges he refused to leave because he could not walk, and insisted that he see a doctor. Plaintiff claims he was then seen by Dr. Ferdous about ten minutes later.

Plaintiff alleges Dr. Ferdous conducted a "very fast examination" of his legs, in which she established plaintiff had some mobility in his legs and feet. According to plaintiff, Dr. Ferdous told plaintiff she could order an X-ray and send him to the infirmary for a few days of observation. (Am. Compl. at ECF 10–11). Plaintiff alleges he told Dr. Ferdous that the crack he

3

felt in his lower back was in the precise location where Dr. Garrell performed surgery the previous year, his "back pain had continually worsened with each passing day," and his condition required an MRI and a CAT scan. (Am. Compl. at ECF 11). According to plaintiff, Dr. Ferdous said plaintiff would have to wait a few weeks until his next appointment with the neurosurgery unit at WMC. Plaintiff alleges he stayed in the infirmary for four or five days before being released.

III. Appointment at WMC in August 2018

According to the amended complaint, on August 1, 2018, plaintiff was seen by two neurosurgeons, Dr. Wainwright and Dr. Remer, at WMC. Plaintiff claims he described the July 17, 2018, incident, and insisted that he needed an X-ray, MRI, and CAT scan of his lower lumbar area. According to plaintiff, Dr. Wainwright attempted to hand an officer plaintiff's discharge papers and medical records in order to clear the room for other patients. Plaintiff alleges the officer requested a medical supervisor on plaintiff's behalf, but was told a supervisor would not be available that day. However, plaintiff claims he was seen by Dr. Bowers at WMC later that day.

According to plaintiff, Dr. Bowers admitted plaintiff into the emergency room, and arranged for plaintiff to receive an X-ray, MRI, and CAT scan. Thereafter, plaintiff alleges he was told his L3-S1 had been partially broken, and that only three of the four screws installed during his 2017 surgery could be replaced.

IV. WMC Appointment Cancellation

Plaintiff alleges he had a follow-up appointment at WMC scheduled for November 28, 2018. According to plaintiff, he was told by multiple officers on November 28, 2018—the day of his appointment—that his appointment had been moved: first from 2:00 p.m. to 1:00 p.m.,

4

then from 1:00 p.m. to 12:00 p.m., and, eventually, that his appointment had been cancelled altogether. Plaintiff claims WMC rescheduled his follow-up appointment in retaliation for filing this lawsuit on October 15, 2018.

V.      Housing Transfer

Plaintiff alleges that on December 13, 2018, he spoke with Dep. Supt. Henton, who informed plaintiff that he was being transferred from B-Block in Sing-Sing to Green Haven. According to plaintiff, Dep. Supt. Henton explained the transfer was meant to address plaintiff's medical needs, as B-Block in Sing Sing has stairs, whereas Green Haven is flat. Plaintiff claims the "transfer was retaliatory for the filed complaint." (Am. Compl. at ECF 15). Moreover, plaintiff asserts defendants failed to initiate a transfer to a "flat prison" at the time of his spinal injury. (Id.)

## DISCUSSION

I.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II. Eighth Amendment Deliberate Indifference Claim

The State Defendants argue plaintiff's deliberate indifference to serious medical needs claim fails because plaintiff does not adequately allege the State Defendants were either deliberately indifferent to plaintiff's serious medical needs or personally involved in plaintiff's medical care.

The Court agrees.

As an initial matter, plaintiff asserts deliberate indifference claims under both the Eighth and Fourteenth Amendments. Because plaintiff was a convicted prisoner when the events giving

6

rise to his claim occurred, his claim arises under the Eighth Amendment, not the Fourteenth. See Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017).

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "An inmate's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that 'conditions of confinement [are] a form of punishment'" and thus is a "'violation of [the] Eighth Amendment right to be free from cruel and unusual punishments.'" Jacks v. Annucci, 2019 WL 3239256, at *3 (S.D.N.Y. July 18, 2019) (quoting Darnell v. Pineiro, 849 F.3d at 35).[3]

A.  Legal Standard

To state a claim for constitutionally inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106. This test has an objective prong and a mens rea prong: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts. First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth

---

[3]  Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

7

Amendment only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." Id. at 280. Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. But if the offending conduct is the "medical treatment given, the seriousness inquiry is narrower." Id. When "the prisoner is receiving appropriate on-going treatment for his condition [and] brings a . . . denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

The mens rea component requires a showing that defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[T]he charged official must act with a sufficiently culpable state of mind." Id. "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was 'aware of facts' from which one could infer that 'a substantial risk of serious harm' existed, and that the defendant actually drew that inference." Dotson v. Fischer, 613 F. App'x 35, 38 (2d Cir. 2015) (summary order) (citing Farmer v. Brennan, 511 U.S. at 837).

However, it is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong,

8

143 F.3d 698, 703 (2d Cir. 1998). "[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018). Courts often look to the "degree of risk associated with the negligent treatment." See id. (collecting cases). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation. Chance v. Armstrong, 143 F.3d at 703.

B. Personal Involvement

To adequately plead a Section 1983 claim, a plaintiff must also "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. The complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). A plaintiff cannot "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." Id. Rather, a plaintiff must plead each defendant's personal involvement in an alleged constitutional violation.

A plaintiff may satisfy the personal involvement requirement by alleging one of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

9

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[4]  Moreover, Section 1983 liability cannot be predicated on a theory of respondeat superior.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

    C.    Application

Here, plaintiff fails plausibly to allege a claim for deliberate indifference to serious medical needs against the State Defendants.

    1.    Dr. Ferdous

Plaintiff's allegations against Dr. Ferdous fail to satisfy both prongs of the Eighth Amendment deliberate indifference analysis.  As a preliminary matter, Dr. Ferdous treated plaintiff—she ordered an X-ray and placed plaintiff in the infirmary for four to five days.  Because Dr. Ferdous provided treatment, "the seriousness inquiry is narrower."  Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d at 185).

Here, plaintiff does not allege Dr. Ferdous intentionally opted for a less effective or less expensive course of treatment, or perceived, but consciously disregarded, a serious risk to plaintiff's health.  See Chance v. Armstrong, 143 F.3d at 703.  Thus, Dr. Ferdous's decision to forgo a MRI and CAT scan while ordering an X-ray and admitting plaintiff to the infirmary does not indicate a denial or delay of treatment.  Victor v. Milicevic, 361 F. App'x 212, 215 (2d Cir. 2010) (summary order) ("Whether to order an MRI or similar diagnostic treatments is a classic example of a matter for medical judgment.").  And even if Dr. Ferdous's decision to forgo

---

[4]    After Ashcroft v. Iqbal, district courts within this Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable.  See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016).  The Second Circuit has yet to resolve this dispute.  Id.

additional testing and refuse plaintiff's request to expedite his hospital visit was negligent, the Eighth Amendment deliberate indifference standard requires more. Allegations of mere negligence are not enough. See Harris v. Westchester County Med. Ctr., 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011). Here, plaintiff alleges Dr. Ferdous was at most negligent, and even that claim requires a liberal construction.

Accordingly, plaintiff's deliberate indifference to serious medical needs claim against Dr. Ferdous must be dismissed.

### 2. Dr. Koenigsmann

Plaintiff's amended complaint fails to plead adequate factual allegations to satisfy the mens rea prong of an Eighth Amendment deliberate indifference claim against Dr. Koenigsmann. Although plaintiff names Dr. Koenigsmann as a defendant in the amended complaint, the only substantive allegation respecting Dr. Koenigsmann appears in plaintiff's opposition to the State Defendants' motion to dismiss. In his opposition, plaintiff alleges Dr. Koenigsmann "delayed [his] physical therapy for over 6-months after [his] very serious spinal surgery." (Doc. #60 ("Pl. Mem.") at 5).

Plaintiff adequately alleges the objective prong—that a six-month delay in providing physical therapy following his spinal surgery could amount to a sufficiently serious deprivation. Indeed, plaintiff alleges that Dr. Garrell twice "signed for" physical therapy following plaintiff's surgery, in August and October 2017. (Am. Compl. at ECF 8). Plaintiff also alleges his medical provider, Ms. V. Monroe, requested that plaintiff receive physical therapy. Further, plaintiff asserts physical therapy was not provided until February 2018. Together, these facts are sufficient to allege a serious deprivation of medical care.

However, plaintiff's allegations are insufficient to state a plausible claim that Dr. Koenigsmann was aware of plaintiff's serious medical needs, disregarded those needs, and chose to delay plaintiff's physical therapy. Plaintiff must adequately plead that the prison official subjectively knew of, and consciously disregarded his serious medical needs. See Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam). Here, plaintiff's submissions contain no such allegations.

Accordingly, plaintiff's Eighth Amendment claim against Dr. Koenigsmann must be dismissed.

### 3. Nurse Gudewicz

Plaintiff has not plausibly pleaded Nurse Gudewicz's personal involvement in a serious medical deprivation. According to plaintiff, Nurse Gudewicz told plaintiff he would have to wait several hours to see a doctor and Nurse Gudewicz attempted to provide plaintiff a medical return pass. However, plaintiff refused to leave medical and was eventually examined by Dr. Ferdous, approximately ten minutes later. Thus, Nurse Gudewicz did not actually deny or delay plaintiff's medical care in a meaningful way.

Accordingly, plaintiff's deliberate indifference claim against Nurse Gudewicz must be dismissed.

### 4. Dep. Supt. Henton

Plaintiff has not plausibly alleged Dep. Supt. Henton's personal involvement in a claim for deliberate indifference to his serious medical needs. Plaintiff's amended complaint alleges Dep. Supt. Henton informed plaintiff that he was being transferred from B-Block in Sing Sing to Green Haven on December 13, 2018. Plaintiff argues that a five-month delayed transfer to a

"flat prison" while he was at "high risk" of incurring further damage to his spine constitutes deliberate indifference to his serious medical needs. (Am. Compl. at ECF 15).

However, there is no indication in the amended complaint that Dep. Supt. Henton was involved in the decision to transfer plaintiff, or even to delay plaintiff's transfer. Thus, plaintiff has failed adequately to allege: (i) Dep. Supt. Henton's personal involvement; (ii) that the delay in transferring plaintiff to a flat prison was sufficiently serious; or (iii) that Dep. Supt. Henton was aware of the risk of serious harm posed by the delay of plaintiff's relocation to a flat prison, and disregarded that risk.

Accordingly, plaintiff's deliberate indifference claim against Dep. Supt. Henton must be dismissed.

III. First Amendment Retaliation Claim

The State Defendants argue plaintiff fails to state a claim for retaliatory transfer respecting Dep. Supt. Henton, and that plaintiff fails to allege his transfer from B-Block in Sing Sing to Green Haven was adverse.

The Court agrees.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege: (i) he engaged in constitutionally protected speech or conduct; (ii) a defendant took adverse action against him; and (iii) the protected activity and adverse action are causally connected. Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015). And, as discussed above, a plaintiff must allege personal involvement for each named defendant in a Section 1983 case. See Ashcroft v. Iqbal, 556 U.S. at 676.

Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those

otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d at 295. Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. Id.

With respect to the first element, "the filing of prison grievances is a constitutionally protected activity." Davis v. Goord, 320 F.3d 346, 352–53 (2d Cir. 2003). With respect to the second element, while prison officials have broad discretion to transfer prisoners, see Montanye v. Haymes, 427 U.S. 236, 243 (1976), it is well settled that a transfer may not be made solely in retaliation for the exercise of constitutionally protected rights. Meriwether v. Coughlin, 879 F.2d 1037, 1046 (2d Cir. 1989). However, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d at 353. "Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." Id. In making this determination, the inquiry must be "tailored to the different circumstances in which retaliation claims arise, bearing in mind that [p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." Id. (alteration in original). Finally, plaintiff must allege a causal connection between the protected speech and the adverse action. Dolan v. Connolly, 794 F.3d at 294.

Even liberally construed, plaintiff's amended complaint does not sufficiently allege a claim for First Amendment retaliation against Dep. Supt. Henton concerning the transfer from Sing Sing to Green Haven.[5] Indeed, there are no allegations in the amended complaint that the

---

[5] Plaintiff also asserts a retaliation claim against WMC.

transfer from Sing to Sing to Green Haven was adverse or that it would deter a similarly situated individual from exercising his constitutional rights.

Plaintiff claims defendants retaliated in response to plaintiff's filing the instant lawsuit. Specifically, plaintiff alleges two retaliatory incidents: (i) a series of abruptly rescheduled appointments with the neurosurgery clinic at WMC on the morning of November 28, 2018, and (ii) plaintiff's notification of his transfer from in Sing Sing to Green Haven on December 13, 2018.[6] Plaintiff argues that if his transfer was principally for medical reasons—which is what plaintiff alleges Dep. Supt. Henton told him—his transfer should have occurred sooner. Plaintiff also asserts he could have been transferred within Sing Sing to A-Block, which is also flat, rather than to another facility.

Although plaintiff plainly alleges the first prong of a retaliation claim—that he engaged in protected activity by filing a lawsuit— plaintiff's amended complaint is devoid of any allegation or explanation for why such transfer would be retaliatory. Thus, plaintiff fails to satisfy the second prong, that Dep. Supt. Henton took an adverse action against him.

Indeed, plaintiff alleges B-Block of Sing Sing has "multiple stairs . . . entering and leaving the block," whereas Green Haven, is a "flat prison." (Am. Compl. at ECF 15). Further, plaintiff claims he was told by Dep. Supt. Henton that if he remained in B-Block at Sing Sing he would be at a "high risk of being hurt walking up and down stairs in B-Block." (Id.). Such statement suggests the relocation was beneficial for plaintiff.

---

[6] Plaintiff's first retaliation claim is against WMC, and WMC has answered the amended complaint rather than moved to dismiss. Therefore, only the claim concerning Dep. Supt. Henton and the allegedly retaliatory transfer will be discussed herein.

Finally, if plaintiff's claim concerns the duration of time before he was transferred to a flat prison, there is no indication in the amended complaint that Dep. Supt. Henton was personally involved in this decision or any delay.

Accordingly, plaintiff's First Amendment retaliation claim against Dep. Supt. Henton must be dismissed.[7]

IV.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

However, leave to amend "may properly be denied for: 'undue delay, . . . [or] futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when plaintiff is proceeding pro se. See Martin v. Dickson, 100 Fed. App'x 14, 16 (2d Cir. 2004) (summary order).

Here, reading the amended complaint liberally, the Court does not find any allegations suggesting plaintiff has a valid deliberate indifference claim against any of the State Defendants that was "inadequately or inartfully pleaded," and for which that plaintiff should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds that

---

[7]     Because the Court concludes plaintiff's claims respecting all of the State Defendants must be dismissed, the Court need not address the State Defendants' qualified immunity arguments.

16

repleading would be futile, because the problems with plaintiff's amended complaint are substantive, which "better pleading will not cure." See id.

Moreover, because the Medical Defendants answered the amended complaint, plaintiff's claims against the Medical Defendants are proceeding. To the extent plaintiff is entitled to relief, it can be obtained from the Medical Defendants if plaintiff is successful in proving his claims.

Further, granting plaintiff leave to amend as against the State Defendants would likely result in renewed motions to dismiss from those defendants, causing further delay to the progress of plaintiff's case. In light of the Court's finding that repleading would be futile, such delay would be unwarranted and contrary to the interests of justice.

Accordingly, because plaintiff did not request leave to amend, and because he has not indicated that he will be able to properly state a cause of action in a second amended complaint, leave to amend is denied. See Martin v. Dickson, 100 F. App'x at 16.

**CONCLUSION**

The State Defendants' motion to dismiss is GRANTED.

The Clerk is instructed to terminate Facility Health Service Director Dr. Razia K. Ferdous; Deputy Superintendent of Health Services Sonji Henton; Nurse Thomas Gudewicz; and Deputy Commissioner and Chief Medical Officer Dr. Carl J. Koenigsmann, as defendants in this case.

The Clerk is also instructed to terminate the motion. (Doc. #49).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 11, 2020
       White Plains, NY

                            SO ORDERED:

                            Vincent L. Briccetti
                            United States District Judge